UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Joseph and Barbara Pukt

    v.                                    Civil No. 14-cv-215-JD
                                              Opinion No. 2016 DNH 085
Nexgrill Industries, Inc.

O R D E R

    Joseph and Barbara Pukt brought suit against Nexgrill
Industries, Inc., alleging claims that arose from damage to
their property after a grill manufactured by Nexgrill caught
fire.  Nexgrill moves to exclude the testimony of two of the
Pukts' expert witnesses, and the Pukts object.  The Pukts move
to exclude the testimony of two of Nexgrill's expert witnesses,
and Nexgrill objects.  Nexgrill also moves to strike an
affidavit submitted by the Pukts in support of their reply to
Nexgrill's objection to their motion to exclude expert opinion.
The Pukts object to that motion.

Background

    Joseph Pukt received the Charmglow grill that is the
subject of this case as a Father's Day gift from his family in
2005.  On July 1, 2012, the Pukts' son, Jonathan Alger, cooked
on the grill.  Soon after he was through cooking, the grill

caught fire, and the fire spread to the deck and house, causing extensive damage.

The Pukts' Charmglow grill operated with a removable propane gas cylinder located in a cabinet below the grill burners that provided gas to the burners through a hose.  The grill had a removable grease tray that was located below the cooking area and above the grill cabinet.  The propane cylinder used in the grill had a pressure relief valve ("PRV") to vent propane if pressure in the cylinder reached 375 pounds per square inch, which would occur if the propane in the cylinder reached 160 degrees.  When propane is released through the PRV, it makes a hissing sound.

The grill had a regulator that attached to the propane cylinder and the hose.  The regulator had an excess flow valve ("EFV") that was intended to restrict the flow of propane out of the cylinder in the event of a hose failure.  At a certain level of gas flow, the plastic nut in the regulator is designed to melt and activate a "back-check" that obstructs the flow of propane from the cylinder.

The propane cylinder in the Pukts' grill had last been replaced two weeks before the fire.  Joseph Pukt made sure at that time that the hose was not touching the underside of the grill or the grease tray.

The Consumer Product Safety Commission ("CPSC") issued a safety recall for the Pukts' model of the Charmglow gas grill in September of 2005.  The recall states:  "The hose connecting the propane tank with the manifold may run up too close to the firebox.  The heat from the firebox could damage the hose.  The hose can leak gas.  A fire or explosion may occur."

The parties dispute the cause and origin of the Pukts' grill fire.  The experts all represented that they used the method provided by the National Fire Protection Association, NFPA 921, <u>Guide for Fire and Explosion Investigations</u>, but arrived at different conclusions.

<u>Standard of Review</u>

To testify as an expert, a witness must be qualified to do so "by knowledge, skill, experience, training, or education." Fed. R. Civ. P. 702.  A qualified expert witness "may testify in the form of an opinion or otherwise" if the witness's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" if "the testimony is based on sufficient facts or data;" if "the testimony is the product of reliable principles and methods;" and if "the expert has reliably applied the principles and methods to the facts of the case."  <u>Id.</u>  Once the expert's qualifications are established, the opinion is

3

shown to be relevant, and the bases for the opinion are both sufficient and reliable, "the credibility and weight of the expert's opinion [are] for the factfinder." United States v. Jordan, 813 F.3d 442, 446 (1st Cir. 2016).

The party who offers the expert witness bears the burden of showing that the opinion is admissible under Rule 702. United States v. Tetioukhine, 725 F.3d 1, 6 (1st Cir. 2013). A proponent of expert testimony is not required, however, to prove that the expert's opinion is correct. Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998).

I.  Motion to Strike Affidavit

Nexgrill moves to strike the affidavit of Kenneth Mayer, who is an expert witness for the Pukts, that was submitted in support of the Pukts' reply to Nexgrill's objection to the Pukts' motion to exclude Nexgrill's experts' opinions.[1]  Nexgrill argues that part of paragraph three in the affidavit, which pertains to the location of the grease tray in the grill after the fire, provides an opinion that was not previously disclosed by the Pukts and that is based on mere speculation.

---

[1] Nexgrill moves to strike all of Mayer's affidavit although it cites only part of paragraph three as containing undisclosed expert opinion.

4

The challenged statements in Mayer's affidavit were submitted to show that the opinion of Nexgrill's expert, Jason Kramarczyk, should be excluded because he failed to consider material evidence, including the grill artifacts.  Kramarczyk stated that in his opinion the location of the grease tray in the grill was unknown and that it could have been open, which might have caused the fire.  Mayer provided his affidavit based on his examination of the grill after the fire and photographs of the grill taken by Nexgrill's expert witness, Alan Dudden. Paragraph three of the affidavit states (with the challenged part underlined):

> The sloped side of the bowl assembly, which was impacted by the fire extinguisher valve when it exploded upwards, is engaged with the full length of the grease tray.  When the fire extinguisher exploded, the impact caused the sheet metal to distort.  In turn, <u>the grease tray and bowl assembly were locked together in the same condition that existed at the time of the explosion, as depicted in the photos. Thus the grease tray was fully inserted at the time of the explosion, as depicted in the photos</u>.

In their objection, the Pukts do not dispute that Mayer did not disclose his opinion about the location of the grease tray. They argue instead that the physical evidence, the remains of the grill, show that Kramarcyzk's opinion is unsupported and wrong.  They also state without citation to authority or other explanation that "the affidavit is undoubtedly fair response to

the [sic] Kramarczyk's new disclosure of this grease tray hypothesis at his deposition."

To the extent Mayer's opinions about the location of the grease tray were not properly disclosed, they cannot be used in support of the Pukts' motion to exclude Kramarcyzk's opinion. Fed. R. Civ. P. 37(c)(1). The court does not decide at this time whether the opinion in paragraph three would be admissible at trial. Paragraph three will not be considered for purposes of the Pukts' motion to exclude Kramaczyk's opinions. Therefore, the motion to strike is granted to the extent that the opinion in paragraph three is not considered for purposes of the pending motion to exclude expert opinion.

II.   <u>Nexgrill's Motion to Exclude Expert Testimony</u>

Nexgrill moves to exclude the opinions of Kenneth Mayer and David Wheeler, the Pukts' expert witnesses, that the fire was caused by the defect in the grill that required the recall. In support, Nexgrill contends that the opinions of Mayer and Wheeler about the cause of the grill fire are not reliable or relevant. The Pukts contend that both experts' opinions meet the requirements of Rule 702.

A.  Reliability

As provided in Rule 702, an expert's opinion is reliable if it is based on sufficient facts and data, if the expert used reliable principles and methods, and if the expert reliably applied the principles and methods.  In contrast, an opinion is not reliable if it is based on conjecture or speculation or if it lacks a sufficient factual foundation.  United States v. Organon USA Inc., 2015 WL 10002943, at *3 (D. Mass. Aug. 17, 2015) (citing Damon v. Sun Co., 87 F.3d 1467, 1474 (1st Cir. 1996)).  Generally, disputes about the factual bases of an expert's opinion affect the weight and credibility of the opinion but not its admissibility.  See Milward v. Acuity Specialty Prods. Gr., Inc., 639 F.3d 11, 22 (1st Cir. 2011); Payton v. Abbott Labs, 780 F.2d 147, 156 (1st Cir. 1985); South Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc., 2016 WL 696085, at *19 (D. Mass. Feb. 19, 2016).

1.  Kenneth Mayer

Kenneth Mayer works as a forensic engineer for Atlantic Professional Services in Nutley, New Jersey.  He has a bachelor's degree in computer science and master's degrees in electrical engineering and computer science.  He is a licensed professional engineer in New Jersey.  Mayer is also a volunteer firefighter and has a fire official's license.  He has

7

investigated the cause and origin of many fires and has investigated twelve fires involving gas grills.  Nexgrill does not challenge Mayer's qualifications to give expert opinion testimony in this case.

For his investigation of the Pukts' grill fire, Mayer reviewed the NFPA 921 Guide for Fire and Explosion Investigations, the 2008 NFPA Fire Protection Handbook, other books on fires and ignition of fires, deposition transcripts, Nashua Fire Rescue's reports on the fire at the Pukts' property, CPSC documents, a contemporaneous video of the fire, and other documents.  Mayer also interviewed Joseph Pukt.  He examined the remains of the propane gas cylinder and the grill that were involved in the fire.

After considering and ruling out the possibility that heat from the grill ignited the deck railing to cause the fire, Mayer concluded that the fire started inside the grill.  He also concluded that the location of the grill on the deck was irrelevant to the extent of the fire.  In Mayer's opinion, the fire started because of the defect in the grill that allowed the gas hose to come into contact with the underside of the grill and melt.

Once the hose melted, the propane escaped freely and ignited.  In Mayer's opinion, the EFV on the cylinder failed,

because the EFV should have stopped the flow of propane.  The heat in the cabinet caused the propane cylinder to reach 160 degrees, which triggered the PRV to let off propane, which burned.  Therefore, Mayer concluded, the ignition of the fire was due to the gas hose contacting the underside of the grill's firebox because of the latent defect identified in the recall.

Mayer also did a risk analysis of the grill.  He found that Nexgrill did not properly analyze the hazards or assess the risks in the use of the grill and failed to minimize risks by design.  Mayer concluded that the Charmglow grill was not designed to minimize the potential fire hazard caused by foreseeable use of the grill.  Mayer also found that Nexgrill violated the CPSC requirements and other federal standards regarding product defects and adequate safety warnings.

Mayer stated that he followed the methods and procedures provided by NFPA 921.  Based on his investigation, he found that the Pukts' grill was manufactured with a latent defect because the regulator hose could come in contact with the hot grease drawer or the grill's firebox and that the latent defect caused the fire in the Pukts' grill.  He also concluded that the location of the grill on the deck and other propane cylinders on the deck did not cause the fire.

Mayer prepared a supplemental report to respond to a report prepared by Gas and Mechanical LLC about the causes and origins of the Pukt's fire.  Mayer noted deficits and errors in the opinions expressed in that report.  He concluded that his original opinions remained unchanged that the fire was caused by the defect in the grill which caused the hose to melt and rupture.  He concluded that if the hose had not ruptured, the fire would not have happened, and if the EFV on the regulator had functioned there would only have been a small fire.

 2.  David Wheeler

David Wheeler works for New England Fire Cause & Origin ("NEFCO") located in Rochester, New Hampshire.  He has fire science and criminal justice degrees from New Hampshire Vocational Technical College, which later became Lakes Region Community College.  Wheeler was a New Hampshire state trooper and served as lead investigator on the arson task force.  He has worked for NEFCO for six years and has investigated a number of grill fires.  Nexgrill does not challenge Wheeler's qualification to give his expert opinion.

Wheeler inspected the fire scene at the Pukts' house the day after the fire and interviewed Joseph and Barbara Pukt.  In addition, Wheeler considered fire scene photographs, the Nashua Fire Department report, the grill's installation manual, the

10

deposition of Allen W. Dudden taken in another grill fire case,
the Gas and Mechanical Laboratories Inc. report, the deposition
of New Hampshire Fire Marshal Mark Rapaglia, the depositions of
the Pukts, the deposition of a neighbor, and a YouTube video of
the fire before the fire department arrived.  Wheeler ruled out
as possible causes of the fire the electrical wiring in the
house and heat from the grill igniting the deck.  He also
considered the grill recall materials.

Wheeler concluded that the fire started in the lower
cabinet of the grill and that it was an accidental event.  In
his opinion, the location where the fire started "is consistent
with a failure of the gas hose that came into contact with a hot
object within the grill cabinet/assembly."  Wheeler relied on
Mayer's report for details about the failure of the hose.

### 3.  Nexgrill's Challenges

Nexgrill contends that the opinions provided by Mayer and
Wheeler are not admissible because they did not test the Pukts'
burned grill, did not test an exemplar grill, and did not
examine the hose, which was destroyed in the fire.  Based on
those perceived deficiencies, Nexgrill argues that their
opinions are based on speculation without factual foundation.
Nexgrill also contends that their opinions that the hose
contacted the underside of the grill are contrary to the

evidence that when Joseph Pukt installed the cylinder, two weeks
before the fire, the hose was not touching the underside of the
grill and that the orientation of the cylinder did not change.
Nexgrill challenges Mayer's opinion about when the PRV was
triggered based on evidence of when various witnesses heard a
hissing noise from the grill.

Mayer and Wheeler followed the procedure of NFPA 921, which
Nexgrill does not dispute is the appropriate method for
investigating the fire.[2]  Nexgrill's criticisms do not show that
the opinions of Mayer and Wheeler are unreliable.  Instead,
Nexgrill's raises factual issues that may be subjects for cross-
examination to test the credibility and weight of those

---

[2] In its reply, Nexgrill contends that Mayer and Wheeler rely
on speculation and possibility in violation of NFPA 921 and
violated the NFPA standard which provides that a specific
ignition source cannot be determined based on a "negative
corpus," that is, without evidence to support it.  Ordinarily,
the court does not consider arguments raised for the first time
in a reply.  LR 7.1(e)(1); SignalQuest, Inc. v. Chou, 2016 WL
738209, at *5 (D.N.H. Feb. 23, 2016).
    The Pukts, however, addressed those arguments in their
surreply.  Regardless of whether the 2011 or 2014 version of
NFPA 921 would apply here, Mayer and Wheeler identified
sufficient evidence to support their opinions to avoid the
negative corpus issue.  To the extent Nexgrill disputes the
evidentiary basis for the opinions, that is an issue for cross-
examination.

opinions.  Therefore, the opinions of Mayer and Wheeler are not excluded for lack of reliability.[3]

B.  Relevance

An opinion must address facts that are at issue in the case to be relevant.  Bogosian v. Mercedes-Benz of N. Am., Inc., 104 F.3d 472, 476 (1st Cir. 1997).  The expert's analysis and conclusions must fit the facts in the case at hand so that the opinion adequately addresses the issue to be decided.[4]  Samaan v. St. Joseph Hosp., 670 F.3d 21, 32-35 (1st Cir. 2012).

Nexgrill contends that Mayer's opinions are not relevant because Mayer considered a grill fire in another case, the Dunn case, which involved a different model grill.  In Mayer's forty-

---

[3] Nexgrill also argues for the first time in its reply that the opinions of Mayer and Wheeler should be excluded under Federal Rule of Evidence 403 because the opinions are more unfairly prejudicial than probative.  Even if that theory had been properly raised, Nexgrill has not shown that the opinions of Mayer and Wheeler must be excluded on that basis.

[4] As an example, the Supreme Court has explained that if the issue in the case is whether the night in question was dark, expert testimony about the phases of the moon would be relevant. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 591 (1993). On the other hand, if the issue in the case is what happened during that night, "evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night." Id.

four page report, Mayer explains in detail all of the
information he considered in arriving at his opinion on the
cause of the fire.  Mayer mentions the Dunn case in a footnote
and acknowledges that the fire involved a different model grill
made by Nexgrill.  Mayer mentioned the Dunn case to consider the
similarity of the resulting fire damage and the failure of the
EFV in that case.

As such, Mayer's brief consideration of the Dunn case does
not make his opinion on causation irrelevant.

II.   Pukts' Motion to Exclude Expert Testimony

The Pukts move to exclude the opinions of Nexgrill's expert
witnesses, Allen Dudden and Jason Kramarczyk.  The Pukts contend
that those opinions are not reliable because of a lack of
supporting facts, because the opinions are inconsistent, because
Dudden changed his opinion during his deposition, and because
the experts did not follow their stated methodology.

A.   Allen Dudden

Allen Dudden works for Gas and Mechanical LLC in Missoula,
Montana.  As stated in his resume provided with his report,
Dudden is a "Professional Engineer in the State of California in
the field of Safety (SF 1434)" and a "Certified Gas Engineer
(CGE 093)."  He has worked at Gas and Mechanical LLC through his

career.  Nexgrill hired Dudden to investigate grill fires in
2005 related to the recall issues, and then retained him to
serve as an expert in this case.  The Pukts do not dispute that
he is qualified to provide expert opinions in this case.

In making his report, Dudden reviewed ANSI standards,
Canadian Standards Association test reports on Nexgrill grills,
Mayer's and Wheeler's reports, the Nashua Fire Department report
on the Pukts' fire, "Fire Video from Face book," depositions,
and other documents.  Dudden considered several possible causes
for the fire:  the propane cylinder valve, a grease fire in the
grill, improper replacement of the grill burners, a spider or
bug in the "venturi" of the burner, and the latent defect of the
hose contacting a hot surface of the grill.  Dudden concluded
that he could not determine what caused the fire, but he also
stated that the gas hose was not touching the bottom of the
grill or the grease drawer.

B.  Jason Kramarczyk

Jason Kramarczyk works for Unified Investigations &
Sciences, Inc., which is located in Nashua, New Hampshire.  He
has a bachelor of science degree in mechanical engineering and a
master of science degree in fire protection engineering from
Worcester Polytechnic Institute.  He previously worked for a
fire investigation company in California, an engineering company

in Colorado, and an investigations and engineering company in Colorado.  He is a licensed fire protection engineer.  The Pukts do not challenged Kramarczyk's qualifications.

In his report, Kramarczyk says that his company, Unified, undertook the assignment but does not explain what he did or what may have been done by others.  He states that the fire scene was examined in August of 2012, research was done on the history of the grill and recall information, an exemplar grill was examined, and documents were reviewed, including photographs, depositions, the Nashua Fire Department report, the grill's use and care guide, Dudden's report, and other reports and documents.  Kramarczyk concluded that the cause of the fire is undetermined.

C.  The Pukts' Challenges

The Pukts contend that the opinions of Dudden and Kramarczyk that the cause of the fire cannot be determined do not meet the reliability requirement of Rule 702.  In support, the Pukts argue that Dudden and Kramarczyk contradict each other, that Dudden changed his opinion during his deposition, and that both experts failed to consider CPSC documents and Nexgrill's discovery responses.  Nexgrill responds that Dudden and Kramarczyk followed the NFPA 921 procedure for fire investigation.

Discrepancies and contradictions within and between the
experts' opinions provide fertile grounds for cross-examination
on the weight and credibility of the opinions.  See West v. Bell
Helicopter Textron, Inc., 967 F. Supp. 2d 479, 487 (D.N.H.
2013).  Those issues, however, do not necessarily undermine the
expert's methodology used to reach the opinion.  See Campos v.
Safety-Kleen Sys., Inc., 98 F. Supp. 3d 372, 381 (D.P.R. 2015).
Therefore, the identified discrepancies and contradictions do
not require exclusion of the experts' opinions.

The Pukts also argue that Dudden and Kramarczyk failed to
follow the methodology provided by NFPA 921 and required under
Rule 702 by failing or refusing to consider information and
documents about other incidents involving Nexgrill grills.
Specifically, the Pukts cite NFPA 921 § 4.3 and § 19.2 and
represent that those sections require an investigator to "gather
all possible data, create a hypothesis, and then test that
hypothesis."  They also assert that because Rule 702 requires an
expert opinion to be "based on sufficient facts or data" an
expert opinion must be excluded if the expert failed to consider
important information.

Dudden and Kramarczyk provided facts and data, which they
relied on, to support their opinions that the cause of the
Pukts' fire is undetermined.  Any weaknesses in the factual

17

bases of the experts' opinions can be addressed through cross-examination.  See Milward, 639 F.3d at 22.  Therefore, the experts' failure to consider information about other Nexgrill fires does not require that the opinions be excluded due to a lack of reliability.

## Conclusion

For the foregoing reasons, the defendant's motion to strike (document no. 61) is granted only to the extent that the challenged opinion in paragraph three of the affidavit is not considered for purposes of the pending motion to exclude expert opinion.  The parties' motions to exclude expert opinion testimony (documents 42 and 48) are denied.

SO ORDERED.

_Joseph A. DiClerico, Jr._
Joseph DiClerico, Jr.
United States District Judge

April 22, 2016

cc:  Raymond E. Mack, Esq.
     Joseph Gardner Mattson, Esq.
     Joseph L. McGlynn, Esq.
     Kevin Truland, Esq.